UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. SAM LEBARRE HORTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-0266-CVE-mjx |
| ) | |
| SOUTHWEST MEDICAL CONSULTING, ) | |
| LLC, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court are defendant Molina Healthcare, Inc.'s (Molina) motion to dismiss (Dkt. # 9) and defendant Southwest Medical Consulting, LLC's (Southwest Medical) motion to dismiss (Dkt. # 29). Defendants ask the Court to dismiss plaintiff's claims for lack of standing pursuant to Federal Rule of Procedure 12(b)(1).[1] Plaintiff responds that he has alleged concrete injuries in his complaint that establish standing. Dkt. # 19, at 1; Dkt. # 31.

**I.**

This case arises from a three-page facsimile (fax) transmission. Plaintiff alleges that, on or about January 23, 2017, he received a fax transmission advertising Molina's healthcare services. Dkt. # 2, at 27. The fax includes contact information for employees of Molina and Southwest Medical. Dkt. #2, at 36-37. Plaintiff asserts that he did not invite or give defendants permission to send him a fax and that there was no preexisting business relationship between plaintiff and either Molina or Southwest Medical. Id. at 28. Plaintiff also asserts that the fax did not include an "opt-

---

[1] The entirety of Southwest Medical's motion to dismiss is an incorporation and adoption of Molina's motion to dismiss. Dkt. # 29.

out" provision that would inform the recipient of the ability and means to avoid future unsolicited faxes. Id.

Plaintiff filed a class action complaint[2] in the District Court of Rogers County, Oklahoma, asserting that defendants committed common law conversion and violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (TCPA), by sending an unsolicited fax that failed to include an opt-out provision. Dkt. # 2, at 32-34. Plaintiff's complaint asserts that he has "suffered actual injury in that by sending the unsolicited fax transmission . . . , Defendants caused [him] to incur costs such as wasted paper, ink toner, occupied telephone line, and the time and expense incurred in receiving, reviewing, and disposing of the fax transmission[]." Id. at 30. Molina removed the suit to this Court. Dkt. # 2, at 1. Defendants now move to dismiss plaintiff's claims against them for lack of standing.

## II.

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiff bears the burden of proving such jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual

---

[2]   Plaintiff filed his original complaint on April 7, 2017. Dkt. # 2, at 12. Before serving either defendant, plaintiff filed an amended complaint on April 12, 2017. Id. at 24.

basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction. Where a motion to dismiss is based on a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

### III.

Defendants argue that this suit should be dismissed because plaintiff lacks standing. Dkt. ## 9, at 1. Article III restricts federal courts to the adjudication of "cases or controversies." U.S. Const. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, plaintiff must establish that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); Tandy, 380 F.3d at 1283. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Defendants argue that plaintiff lacks standing for two reasons. First, defendants assert that plaintiff has not alleged a concrete injury

3

in fact. Dkt. # 9, at 6-9. Second, defendants assert that, even if plaintiff has asserted a concrete injury in fact, it is not fairly traceable to the defendants' alleged actions. Id. at 10-11.

**A.**

The parties' arguments regarding whether plaintiff has stated a concrete injury center on the Supreme Court's recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), and lower federal courts' interpretations of that decision in the context of the TCPA. In Spokeo, the plaintiff, Thomas Robins, asserted a claim under the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 et seq. (FCRA). Id. at 1544. The FCRA seeks to ensure "fair and accurate credit reporting" by imposing requirements on the creation and use of consumer reports. Id. at 1545 (citing 15 U.S.C. § 1681). The defendant, Spokeo, operates a web site that provides to users detailed information such as addresses, phone numbers, finances, and shopping habits about other individuals based on information Spokeo gathers from a wide spectrum of databases. Id. at 1546. Robins discovered that Spokeo had created a report about him that contained inaccurate information and filed a class action complaint alleging that Spokeo willfully failed to comply with the FCRA. Id. The district court dismissed Robins's suit, finding that he had not properly pled an injury in fact. Id. The Ninth Circuit reversed, holding that Robins asserted a sufficiently particularized injury in fact to confer standing. Id.

The Supreme Court reversed the Ninth Circuit's decision because it failed to consider whether Robins had asserted a concrete injury in fact. The Supreme Court explained that a plaintiff must show that his injury is concrete and particularized. Id. at 1548. The Ninth Circuit had assumed that Robins's injury was concrete because he stated a violation of a statutory right, but the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory

4

violation." Id. at 1549. Applied to the FCRA, the Supreme Court found that alleging a bare procedural violation of the FCRA was insufficient to show a concrete injury because such a violation may result in no harm. As the Supreme Court explained:

> For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

Id. at 1550. The Supreme Court remanded the case in order for the Ninth Circuit to address the question of whether Robins's allegations were sufficient to show a concrete injury in fact. Id.

In holding that an alleged violation of a statutory right is not necessarily sufficient to state a concrete injury, the Supreme Court in Spokeo expounded upon what constitutes a concrete injury. In order for an injury to be concrete, it "must be 'de facto'; that is, it must actually exist." Id. at 1548. A concrete injury is "'real,' and not 'abstract.'" Id. However, a concrete injury is not necessarily tangible. Id. at 1549. To determine whether an intangible harm is concrete, courts should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. Additionally, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." Id.

Defendants argue that plaintiff has alleged a bare procedural violation, divorced from any concrete harm and that it is insufficient to confer standing. Plaintiff asserts that he has alleged both

tangible and intangible concrete injuries. Defendants assert that "numerous"[3] district courts since Spokeo have found that a plaintiff asserting a claim under the TCPA for an unsolicited fax does not have standing. Dkt. # 9, at 7. To support their argument, defendants cite five cases in which the district court dismissed a plaintiff's TCPA fax claim due to a lack a standing. Three of these cases, Supply Pro Sorbents. LLC v. Ringcentral, Inc., No. C 16-02113 JSW, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016), Kostamayer Construction, LLC v. Port Pipe & Tube, Inc., No. 2:16-cv-01012, 2016 WL 6143075 (W.D. La. Oct. 19, 2016), and Sartin v. EKF Diagnostics, Inc. (Sartin I), No. 16-1816,

---

[3]  Defendants' use of the word "numerous" in citing five cases is a bit of an overstatement, especially considering the far greater number of district courts that have found standing in post-Spokeo TCPA fax cases. See, e.g., Florence Endocrine Clinic, PLLC v. Arriva Med., LLC, 858 F.3d 1362 (11th Cir. 2017); Wendell H. Stone Co. v. Chesapeake Plywood, LLC, No. MJG-16-2821, at *2-3 (D. Md. May 1, 2017); Backer Law Firm v. Costco Wholesale Corp., No. 15-327-CV-W-SRB, — F.R.D. —, 2017 WL 1907764, at *3 (W.D. Mo. Apr. 27, 2017); Sandusky Wellness Ctr., LLC v. MedTox Sci., Inc., No. 12-CV-2066 (PJS/HB), — F. Supp. 3d —, 2017 WL 1483330, at *4 (D. Minn. Apr. 25, 2017); Physician's Healthsource, Inc. v. Vertex Pharm. Inc., No. 15-11517-JCB, — F. Supp. 3d —, 2017 WL 1534221, at *8 (D. Mass. Mar. 28, 2017); Heather McCombs, D.P.M., L.L.C. v. Cayan LLC, No. 15 C 10843, 2017 WL 1022013, at *4 (N.D. Ill. Mar. 16, 2017); O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC, No. 16-3563, 2017 WL 634069, at *2 (E.D. Penn. Feb. 16, 2017); Whiteamire Clinic, P.A. Inc v. Cartridge World N. Am., LLC, No. 1:16CV226, 2017 WL 561832, at *3 (N.D. Ohio Feb. 13, 2017); St. Louis Heart Ctr., Inc. v. Vein Ctrs. For Excellence, Inc., 4:12 CV 174 CDP, 2017 WL 492778, at *3 (E.D. Miss. Feb. 7, 2017); Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc., No. 2:16-cv-236, — F. Supp. 3d —, 2017 WL 373514, at *4 (S.D. Ohio Jan. 26, 2017); Fairway Med. Ctr. LLC v. McGowan Enters., Inc., No. 16-3782, 2017 WL 1423883, at *4 (E.D. La. Jan. 25, 2017); Gorss Motels, Inc. v. Safemark Sys., LP, No. 6:16-cv-1638-Orl-31DCI, 2017 WL 57313, at *1 (M.D. Fla. Jan. 5, 2017); Fauley v. Drug Depot, Inc., 204 F. Supp. 3d 1008, 1012 (N.D. Ill. 2016); JWD Auto., Inc. v. DJM Advisory Grp. LLC, 218 F. Supp. 3d 1335, 1340 (M.D. Fla. 2016); Physicians Healthsource, Inc. v. A-S Medication Sols., LLC, 318 F.R.D. 712, 720 n.3 (N.D. Ill. 2016); Intersol Indus., Inc. v. Magna Chek, Inc., No. 16 CV 5789, 2016 WL 7550983, at *2 (N.D. Ill. Dec. 29, 2016); Compressor Eng'g Corp. v. Thomas, No. 10-10059, — F.R.D. —, 2016 WL 7473448, at *10 (E.D. Mich. Dec. 29, 2016); Sartin v. EKF Diagnostics, Inc. (Sartin II), No. 16-1816, 2016 WL 7450471, at *5 (E.D. La. Dec. 28, 2016); Davies v. W.W. Grainger, Inc., No. 13-cv-03546, at *2 (N.D. Ill. Nov. 21, 2016); Brodsky v. HumanaDental Ins. Co., No. 1:10-cv-03233, 2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016).

2016 WL 3598297 (E.D. La. July 5, 2016), do little to help defendants' argument because the plaintiffs did not allege injuries beyond violation of the statute. The courts in those cases allowed the plaintiffs to amend their complaints to allege a concrete injury arising from the allegedly unsolicited faxes.[4] See Supply Pro, 2016 WL 5870111, at *3; Kostamayer, 2016 WL 6143075, at *3; Sartin I, 2016 WL 3598297, at *4. These cases are unhelpful because here, plaintiff does not merely assert that the TCPA has been violated; he alleges specific injuries stemming from the violation such as wasted time and resources. Another case cited by defendants, ARcare v. Qiagen North American Holdings, Inc., No. CV 16-7638 PA (Asx), 2017 WL 449173 (C.D. Cal. Jan. 19, 2017), held that allegations of wasted ink, toner, paper, and time constituted a concrete injury, but found the plaintiff lacked standing because the injuries were not traceable to defendant's alleged actions. Id. at *3-4. The Court will discuss ARcare below in addressing defendants' argument regarding traceability, see infra section III.B., but its holding on concreteness goes against defendants' argument.

The only case defendants cite that arguably holds injuries such as those asserted by plaintiff are insufficient to show a concrete injury is St. Louis Heart Center, Inc. v. Nomax, Inc., No. 4:15-CV-517 RLW, 2017 WL 1064669 (E.D. Mo. Mar. 20, 2017). Not only is Nomax an outlier on this issue, see supra, note 3, but it is also distinguishable from this case. Nomax was decided on a motion for summary judgment, and central to the court's holding on standing was the its finding that it was undisputed that the plaintiff had requested and received samples of the defendant's products on "at

---

[4] The Court may quibble with the use of "numerous," but the citation of Sartin I in support of defendants' position is truly misleading. After the plaintiff filed an amended complaint asserting injuries such as wasted time and "tying up fax machines," the court found the plaintiff had asserted a concrete injury. See Sartin II, 2016 WL 7450471, at *4-5.

7

least three to four occasions." Id. at *2 ("[Plaintiff] has not alleged a concrete or particularized harm resulting from receiving faxes that [plaintiff] both invited and did not rebuke.").

The Court finds the great weight of the authority, which holds that injuries similar to those alleged by plaintiff are concrete for determining standing, to be persuasive. Plaintiff's alleged tangible injuries include paper, ink, and toner; these are specific, real injuries that go beyond mere assertions of a TCPA violation. Defendants argue that paper, ink, and toner are de minimus injuries that do not support Article III standing. However, the question is whether plaintiff has shown a concrete injury, not an injury of a certain magnitude. As the Tenth Circuit has recently explained:

> [N]othing in our case law suggests that a single alleged injury is insufficient to confer standing. The Supreme Court has squarely rejected the argument that one lacks standing unless she is 'significantly' injured. [United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 n.14 (1973)]. Instead, anyone with "a direct stake in the outcome of a litigation—even though small" has standing. Id.

Am. Humanist Assoc., Inc. v. Douglas Cnty. Sch. Dist. RE-1, No. 16-1049, — F.3d —, 2017 WL 2641057, at *4 (10th Cir. June 20, 2017); see also Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'") (citing McGowan v. Maryland, 366 U.S. 420, 430-31 (1961)). Whether an injury is concrete is a question of whether it is real as opposed to abstract. Although plaintiff's alleged tangible injuries are small in terms of dollars (or more likely, cents), they are real, and thus, they are concrete.[5]

---

[5] Plaintiff also argues that he has asserted concrete intangible injuries, such as invasion of privacy and occupation of his fax machine. Dkt. # 19, at 6-10. Because the Court finds that plaintiff's alleged tangible injuries are concrete, it need not address his intangible injuries. See Sandusky Wellness, 2017 WL 1483330, at *2 n.1.

**B.**

Defendants argue that, even if plaintiff has asserted a concrete injury in fact, it is not fairly traceable to the defendants' alleged actions. Dkt. # 9, at 10-11. To have standing, "a plaintiff must show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Nova Health Sys. v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting Lujan, 504 U.S. at 560). Article III requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Id. This requirement is "something less than the concept of 'proximate cause.'" Id. (quoting Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1273 (11th Cir. 2003)).

Plaintiff alleges that he suffered an injury because defendants sent him a fax that violated the TCPA in that it was unsolicited and did not contain an opt-out provision. Defendants argue that Article III's causation requirement is not met here because had the fax complied with the TCPA, by being solicited and/or containing an opt-out provision, plaintiff would have suffered the same lost paper, toner, ink, and time. Defendants cite to ARcare, which held that a plaintiff asserting a claim under the TCPA based on unsolicited faxes that contained deficient opt-out provisions did not have standing because the plaintiff did not show how its injury was caused by the receipt of faxes with insufficient opt-out provisions and instead alleged harm that would result from the receipt of any fax. 2017 WL 449173, at *4.

Most courts considering this reasoning as applied to TCPA claims have encountered it in cases involving automated telephone dialing systems (ATDS). The TCPA prohibits certain types of telephone calls made with an ATDS that would not violate the TCPA if dialed manually. 47 U.S.C. § 227(b). One court has dismissed these type of cases for lack of standing because the

9

plaintiff's injuries would be the same whether the call was dialed by an ATDS or manually. See Romero v. Dep't Stores Nat'l Bank, 199 F. Supp. 3d 1256, 1264-65 (S.D. Cal. 2016); Ewing v. SQM US, Inc., 211 F. Supp. 3d 1289, 1293-94 (S.D. Cal. 2016). However, the majority of courts have rejected this argument. See, e.g., Lemieux v. Lender Processing Ctr., No. 16-cv-1850-BAS(DHB), 2017 WL 1166430, at *3-4 (S.D. Cal. Mar. 29, 2017); Hamza v. Dunhams Athleisure Corp., No. 16-11641, 2017 Wl 1077895, at *4-5 (E.D. Mich. Mar. 22, 2017); Mohamed v. Off Lease Only, Inc., No. 15-23352, 2017 WL 1080342, at *3 (S.D. Fla. Mar. 22, 2017); Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc., No. 16-cv-05486-JCS, 2017 WL 733123, at *7 (N.D. Cal. Feb. 24, 2017); LaVigne v. First Cmty. Bancshares, Inc., 215 F. Supp. 3d 1138, 1147-48 (D.N.M. 2016); Ung v. Universal Acceptance Corp., 198 F. Supp. 3d 1036, 1039 (D. Minn. 2016); Wilkes v. CareSource Mgmt. Grp. Co., No. 4:16-CV-038 JD, 2016 WL 7179298, at *5 (N.D. Ind. Dec. 9, 2016).

Defendants' causation argument and the analogous ATDS argument require an unjustified narrowing of what constitutes a defendant's "conduct" and impose a heightened causation requirement that is not supported by case law on standing. As one court explained in rejecting defendants' reasoning in an ATDS case:

> This logic confuses the existence of an injury with availability of a cause of action. The injuries at issue are caused by the placing of unwanted phone calls . . . . That the TCPA only proscribes such calls when made with auto-dialers or artificial or prerecorded voices does not mean that the existence of an injury for Article III purposes depends on whether those means are used, but only that plaintiffs do not have a cause of action when they are not.

Wilkes, 2016 WL 7179298, at *5 (citing Ung, 198 F. Supp. 3d at 1039); see also LaVigne, 215 F. Supp. 3d at 1147 (describing this argument as "conflat[ing] the means through which [the defendant] (allegedly) violated the TCPA with the harm resulting from that alleged violation."). Plaintiff must show that his injury is fairly traceable to defendants' alleged conduct as opposed to the conduct of

10

some third party. Plaintiff has met his burden by alleging concrete injuries—lost paper, ink, toner, and time—that were allegedly caused by defendants' sending an unsolicited fax. According to plaintiff's complaint, had the fax never been sent, plaintiff would not have suffered these harms. Thus, plaintiff's injuries are fairly traceable to defendants's conduct, and plaintiff has satisfied Article III's causation requirement.

**IT IS THEREFORE ORDERED** that Molina Healthcare, Inc.'s motion to dismiss (Dkt. # 9) and defendant Southwest Medical Consulting, LLC's motion to dismiss (Dkt. # 29) are **denied**.

**IT IS FURTHER ORDERED** that defendants Molina Healthcare, Inc. and Southwest Medical Consulting, LLC shall file their Answer(s) to the Complaint (Dkt. # 2) no later than **July 24, 2017.**

**DATED** this 10th day of July, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE