**FIN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DR. SAM LEBARRE HORTON, on behalf of** | ) |
| **himself and all other entities and** | ) |
| **persons similarly situated,** | ) |
| | ) |
| **Plaintiff,** | ) **Case No. 4:17-cv-00266-CVE-JFJ** |
| | ) **JURY DEMAND** |
| **vs.** | ) |
| | ) |
| **MOLINA HEALTHCARE, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

**<u>MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT, CONDITIONALLY CERTIFYING A SETTLMENT CLASS,
APPROVING THE NOTICE PLAN AND PROPOSED SCHEDULING ORDER,
APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVE, ISSUING A
STAY, AND SETTING THE FINAL APPROVAL HEARING</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND.................................................................................2

III.    THE SETTLEMENT AGREEMENT.................................................5

IV.     LEGAL ARGUMENT ....................................................................….7

        A.  Preliminary Approval of the Settlement Agreement is Proper.................7

             i.     Legal Standard Governing Preliminary Approval of Settlement.......8

             ii.    The Settlement is the Product of Informed, Arm's-Length
                    Negotiations Between Experienced Counsel…………………..…....9

             iii.   Questions of Law and Fact Pose Risks in the Litigation……….……10

             iv.    The Value of the Settlement Outweighs the Possibility of
                    Future Relief…………………………………………….…....10

             v.     Counsel Recommends
                    Settlement……………………………………………………....12

        B.  The Class Should Be Conditionally Certified…………………………13

             i.     Legal Standard Governing Class Certification……………………13

             ii.    The Class is So Numerous that Joinder is Impracticable………....…13

             iii.   Common Questions of Law and Fact Exist…………………....…15

             iv.    Claims of the Representative Plaintiff are Typical
                    Claims of the Class……………………………………….…16

             v.     Plaintiff Will Fairly and Adequately Protect the Class'
                    Interests……………………………………………….…....17

i

a.   The Requirements of Rule 23(b)(3) Also Are Satisfied………18

    i.   Questions of Law or Fact Common to the Class
       Predominate Over Questions Affecting Individual
       Members……………………………………………..…18

    ii.  A Class Action is Superior to Other Available Method
       of Adjudication………………………………………20

b.  Appointment of Class Counsel and Representative Plaintiff...21

c.  The Proposed Notice is Adequate……………………...…22

d.  The Court Should Approve the Proposed Scheduling
   Order, Including Setting a Date for the Fairness Hearing…..23

e.  The Court Should Enter an Injunction Pending Final
   Approval………………………………………………..…..23

V.   CONCLUSION……………………………………………..…...24

CERTIFICATE OF SERVICE……………………………………….… 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Adamson v. Bowen,*
   855 F.2d 668 (10th Cir. 1988) ........................................................................8, 15

*Alvarado Partners, L.P. v. Mehta,*
   723 F. Supp. 540 (D. Colo. 1989) ...............................................................11, 12

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591, 117 S. Ct. 2231 (1997) ....................................................13, 18, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ...........................................................................................18

*Anderson v. City of Albuquerque,*
   690 F.2d 796 (10th Cir. 1982) ..........................................................................13

*Beer v. XTO Energy, Inc.,*
   CIV-07-798-L, 2009 WL 764500 (W.D. Okla. Mar. 20, 2009) .......................15, 21

*Brink vs. Raymond James & Associates, Inc.,*
   Case No. 15-60334-CIVDIMITROULEAS (S.D. Fla. Oct. 22, 2018)....................5

*In re Bromine Antitrust Litig.,*
   203 F.R.D. 403 (S.D. Ind. 2001) .......................................................................14

*C-Mart, Inc. v. Metro. Life Ins. Co.,*
   299 F.R.D. 679 (S.D. Fla. 2014) .......................................................................21

*Childs v. Unified Life Ins. Co.,*
   10-CV-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011)..........................10

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
   258 F.R.D. 545 (N.D. Ga. 2007).......................................................................14

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,*
   375 F.2d 648 (4th Cir. 1967) ............................................................................15

*In re Dep't of Energy Stripper Well Exemption Litig.,*
   653 F. Supp. 108 (D. Kan. 1986), aff'd, 855 F.2d 865 (Temp. Emer. Ct. App.
   1988) ..................................................................................................................12

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974)...........................................................................................22

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968) ...........................................................................8

*Heartland Commc'ns, Inc. v. Sprint Corp.*,
    161 F.R.D. 111 (D. Kan. 1995)........................................................................16

*HomeStake Prod. Co. Securities Litigation*,
    76 F.R.D. 351 (N.D. Okla. 1977).....................................................................15

*Horn v. Associated Wholesale Grocers, Inc.*,
    555 F.2d 270 (10th Cir. 1977) .........................................................................14

*Ira Holtzman, C.P.A. v. Turza*,
    728 F.3d 682, 685 (7th Cir. 2013) .................................................................20

*Johnson v. Brennan*,
    10-CV-4712 CM, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) ...........................9

*Jones v. Nuclear Pharmacy, Inc.*,
    741 F.2d 322 (10th Cir. 1984) ...........................................................................9

*Marcus v. Kan. Dep't. of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002).........................................................................8

*McNeely v. Nat'l Mobile Health Care*,
    LLC, CIV-07-933-M, 2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ......................... *passim*

*Menocal v. GEO Grp., Inc.*,
    320 F.R.D. 258 (D. Colo. 2017), aff'd, 882 F.3d 905 (10th Cir. 2018) ................19

*Milonas v. Williams*,
    691 F.2d 931 (10th Cir. 1982) .........................................................................16

*Mims v. Arrow Fin. Servs, LLC*,
    132 S. Ct. 740 (2012)......................................................................................21

*Naylor Farms, Inc. v. Anadarko OGC Co.*,
    CIV-08-668-R, 2011 WL 7267850 (W.D. Okla. June 15, 2011) ...........................19

*Naylor Farms v. Anadarko OGC Co.*,
    CIV-08-668-R, 2009 WL 8572026 (W.D. Okla. Aug. 26, 2009)............................19

*Olenhouse v. Commodity Credit Corp.*,
    136 F.R.D. 672 (D. Kan. 1991)........................................................................15

*Rex v. Owens ex rel. State of Okla.*,
    585 F.2d 432 (10th Cir. 1978) .....................................................................13, 14

*Ross v. Convergent Outsourcing, Inc.,*
  323 F.R.D. 656 (D. Colo. 2018) ............................................................1

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
  314 F.3d 1180 (10th Cir. 2002) ...........................................................17

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ..........................................3

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................11

*Tennille v. W. Union Co.,*
  785 F.3d 422 (10th Cir. 2015) ...............................................................8

*United Food & Commercial Workers Union v. Chesapeake Energy Corp.,*
  281 F.R.D. 641 (W.D. Okla. 2012) ..................................................16, 17

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
  219 F.R.D. 661 (D. Kan. 2004) .......................................................19, 21

*In re Urethane Antitrust Litig.,*
  237 F.R.D. 440 (D. Kan. 2006) .............................................................14

*In re Vitamins Antitrust Litig.,*
  99-197(TFH), 1999 WL 1335318 (D.D.C. Nov. 23, 1999).....................8

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273 (D. Colo. 1997) ...........................................................12

*Zapata v. IBP, Inc.,*
  167 F.R.D. 147 (D. Kan. 1996) .............................................................18


**Statutes**

47 U.S.C. § 227(b)(3)(B) .............................................................................3

47 U.S.C. § 227(b)(3)(C) .............................................................................3

Telephone Consumer Protection Act, 47 U.S.C. § 227 .........................1, 2

Telephone Consumer Protection Act of 1991.............................................2

**Other Authorities**

47 C.F.R. § 64.1200 ............................................................................................................16

47 C.F.R. § 64.1200(a)(4)(i), (iv) .......................................................................................16

Fed. R. Civ. P. 12(b)(6)..........................................................................................................3

Fed. R. Civ. P. 23 *et seq.*........................................................................................... *passim*

4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2017)......................................................8

COMES NOW Dr. Sam Lebarre Horton ("Plaintiff"), by and through undersigned counsel, and respectfully files this Motion pursuant Rule 23(e)(1) of the Federal Rules of Civil Procedure seeking preliminary approval of a settlement with Defendant Molina Healthcare, Inc. ("Molina").

## I.        INTRODUCTION

The Settlement proposed for the Court's approval is the result of hard-fought litigation and an all-day mediation session conducted by the Honorable Layn Phillips, a retired Oklahoma federal judge. In negotiating and ultimately agreeing to the terms of the Settlement, which includes a cash payment of $3,500,000.00, the parties, represented on both sides by experienced counsel with deep expertise in actions brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and class actions, were sufficiently familiar with the relevant facts and the associated legal issues they presented. Accordingly, this settlement reflects the strengths and weaknesses both sides viewed with their respective positions, as well as the risks associated with continuing to litigate the case.

Preliminary approval of a class action settlement, in contrast to final approval, is a determination that there is ... 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659 (D. Colo. 2018) (internal citations omitted).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives." *Id.* (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)). "The standards for preliminary approval of a class settlement are not as stringent as those applied for final approval." *Id.*

Plaintiff respectfully submits that the Settlement satisfies the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure—namely, it is sufficiently fair and reasonable to warrant class-wide notice.   Preliminary approval will not foreclose interested persons from objecting to the Settlement and thereby presenting dissenting viewpoints to the Court.   Instead, by granting preliminary approval and approving the notice plan, all interested parties will be given notice of and the opportunity to present their respective viewpoints.

Plaintiff's Counsel, who have litigated this case in earnest for more than two years and are highly experienced in TCPA class actions, believe that the Settlement is fair, reasonable, and represents an excellent result for the Class.   Defendant denies all claims asserted against it, but has agreed to settle this matter solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

Accordingly, Plaintiff seeks the Court's approval to: (1) appoint Settlement Class Counsel and Class Plaintiff as representative of the Settlement Class; (2) certify the proposed Settlement Class; (3) preliminarily approve the Settlement Agreement; (4) approve the form and manner of providing notice of the Settlement to the Settlement Class and proposed scheduling order; (5) issue a stay of all proceedings against Defendant except those proceedings provided for or required by the Settlement Agreement; and (6) set a hearing date for final approval of the Settlement.

## II.       BACKGROUND

1.       This action was originally filed in the District Court of Rogers County, Oklahoma on April 7, 2017, by Plaintiff as a class action, naming Molina and Southwest Medical Consulting, LLC ("Southwest") as defendants. Plaintiff alleged that Defendants violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of

2005, 47 U.S.C. § 227 ("TCPA"), as well as state conversion law, by sending unsolicited faxes that failed to include an opt-out provision. Plaintiff sought, on behalf of himself and all members of the Class, to recover statutory damages under 47 U.S.C. § 227(b)(3)(B) (a minimum of $500.00), plus treble damages for willful violations under 47 U.S.C. § 227(b)(3)(C).

2.      On May 11, 2017, Molina filed a Notice removing Plaintiff's case to the United States District Court for the Northern District of Oklahoma, where it was assigned to the Honorable Claire V. Eagan.  (D.E. 2).

3.      On May 18, 2017, Molina filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff did not suffer a concrete "injury in fact" as required by the United States Supreme Court's ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016), and, therefore, Plaintiff lacked Article III standing to assert his claims.  (D.E. 9).  Plaintiff opposed Molina's Motion, arguing among other things, that his alleged receipt of an illegal unsolicited fax, and the loss of time, expense and other resources associated with receiving such illegal fax constitutes a "tangible harm," which is adequate to establish the requisite "injury-in-fact" for Article III standing according to *Spokeo*.  (D.E. 19). Judge Eagan denied Molina's Motion.  (D.E. 32).

4.      On August 14, 2017, the Court issued a scheduling order which bifurcated discovery in this matter, limiting the parties at this stage of the litigation to "discovery for issues related to class certification" only, pursuant to which Plaintiff could "inspect the fax machine(s) used to send the alleged unsolicited faxes and any transmission history," and conduct the deposition of one Rule 30(b)(6) witness for each defendant strictly limited to class certification

issues.  (D.E. 44 at 2).[1]

5.      The parties then engaged in class discovery, and discovery of the third-party companies whose platforms were used to send the faxes at issue.  After the parties completed the deposition of the Southwest 30(b)(6) witness, owner and principal Keith Sei ("Sei"), Plaintiff voluntarily dismissed its claims against Southwest, leaving Molina as the sole remaining defendant.  (D.E. 56, 59).  Plaintiff filed his Second Amended Class Action Complaint in December 2017 dropping Southwest as a party and modifying its class definition.  (D.E. 63). Plaintiff and Molina continued to conduct class-specific document discovery through the end of 2017 and the first half of 2018, which culminated in the depositions of Molina's 30(b)(6) corporate witness Kimberly Sweers, and the Plaintiff, Dr. Sam Horton, on August 8, 2018 and August 13, 2018 respectively.

6.      The parties exchanged a great deal of written discovery, yielding the overall production of more than one million pages of documents produced between the Plaintiff and Defendants, which at the time included Southwest Medical in addition to the remaining Defendant, Molina, as well as numerous answers to interrogatories and requests for admission. The parties cooperated in discovery by each bearing the cost of the production of documents to each other.

7.      On August 17, 2018, with class discovery drawing to a close, Plaintiff filed his Third Amended Class Action Complaint focusing the scope of the Class definition (D.E. 77), and on August 31, 2018, Plaintiff filed his Motion for Class Certification (D.E. 83-85) seeking to certify a class under Fed. R. Civ. P. 23(b)(3) comprised of all individuals or entities that, according to Southwest's Provider Target Logs, were sent one or more facsimiles: (1) to a

---

[1] The parties also entered into a protective order to preserve the confidentiality of certain documents and information, and to expedite the flow of discovery material.  (D.E. 46).

telephone facsimile machine number appearing on both the Provider Target Logs and Southwest's Metrofax and MyFax account records; (2) on or after April 12, 2013; and (3) where the Provider Target Logs recorded no verbal or written communications to Southwest from the recipient prior to the facsimile(s) at issue being sent.  Under Plaintiff's proposed class definition, "Provider Target Logs" meant the reports submitted by Southwest to Molina documenting Southwest's attempts to communicate with individuals or entities about joining Molina's healthcare provider network in a given state.

8.     Molina filed its opposition to class certification on September 14, 2018 (D.E. 89), Plaintiff filed its Reply in further support on September 21, 2018 (D.E. 94-95), and Molina petitioned for and received permission to file a surreply on October 5, 2018. (D.E.96-97 (via minute entry)).  On October 30, 2018, Plaintiff filed a Notice of supplemental authority thereby notifying the Court of the recent decision by the United States District Court for the Southern District of Florida in the matter of *Brink vs. Raymond James & Associates, Inc.*, Case No. 15-60334-CIVDIMITROULEAS (S.D. Fla. Oct. 22, 2018). (D.E. 103).

9.     After completing the above briefing, Molina proposed that the parties engage in mediation prior to Judge Eagan's ruling on the Motion for Class Certification. Plaintiff agreed, and on November 13, 2018, the parties jointly moved to stay all proceedings before the Court (with the exception of Molina being permitted to file a response to Plaintiff's notice of supplemental authority (D.E. 107)) until the parties completed their mediation, and the Court granted the stay later that same day. (D.E.110).

## III.     THE SETTLEMENT AGREEMENT

On March 20, 2019, the Parties participated in a full-day mediation with a third-party neutral mediator, the Honorable Layn Phillips (Ret.) of JAMS (the "Mediator"), a former U.S.

District Judge for the Western District of Oklahoma. The mediation and subsequent negotiations resulted in a settlement, as set forth in the written settlement agreement attached as *Exhibit 1* hereto (hereinafter referred to as "the Settlement Agreement").

The proposed Settlement Class is defined as all persons with cases and claims against Molina arising out of the sending of unsolicited facsimiles in connection with Molina's network builds by Southwest for the Class Period from April 12, 2013 to the present.  Excluded from the Settlement Class are Molina, and any affiliate, subsidiary or division of Molina, along with any employees thereof, and any entities in which any of such companies have a controlling interest; Southwest, along with any employees or owners thereof; and all persons who validly opt-out of the Settlement Class. The proposed Settlement Class for settlement purposes meets the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

In return for a release of the Class Representative's and Settlement Class Members' claims, Defendant has agreed to pay the sum of $3,500,000.00 in settlement of the claims alleged in the litigation (hereinafter the "Settlement Fund").  Defendant agreed that any award of attorneys' fees and related litigation costs to Class Counsel, as well as any Incentive Award to the Class Representative, would come from the Settlement Fund.  Additionally, all settlement administration costs, including the costs of notice to the Settlement Class Members, will come out of the Settlement Fund.  In general, the parties' proposed settlement notice plan is comprised of:

(a) *Direct Mail Notice*. Subject to approval by the Court, within twenty (20) days following entry of the Preliminary Approval Order the Claims Administrator will provide Direct Mail Notice in the form attached as Exhibit B to the Settlement Agreement to persons in the Settlement Class, to the extent their current mailing address can be determined.

6

(b) ***Settlement Website***. Within twenty (20) days following entry of the Preliminary Approval Order, the Claims Administrator will establish and maintain the Settlement Website. The Settlement Website shall contain a link to the Website Notice and provide for online submission of Claim Forms. The Settlement Website will become active after entry of the Preliminary Approval Order and shall remain active at least until the date of the Final Approval Hearing.

In support of these recommendations, the Plaintiff also submits to the Court two Declarations of Class Counsel, Joe P. Leniski, Jr. and James A. Streett, in support of the preliminary approval of the Settlement (attached hereto as ***Exhibits 2 & 3***).  As fully set out in *Exhibit 2*, Class Counsel requests that the Court enter a Scheduling Order for the purposes of winding up the administration of the Settlement and completing a Fairness Hearing.

## IV.   LEGAL ARGUMENT

### A.   Preliminary Approval of the Settlement Agreement is Proper

The parties agree that the proposed settlement is fair, reasonable, adequate, and should be approved by the Court. Since the initial filing of the Complaint, all parties have vigorously prosecuted and defended this case, which has reached its end with the proposed class settlement. Defendant has vigorously litigated this matter, including through a Motion to Dismiss at the outset and throughout class certification proceedings.   Additionally, although Plaintiff anticipated that the Court would certify the proposed litigation class, attempting to prove that Defendant willfully and knowingly violated the TCPA would have driven up litigation expenses and left uncertain outcomes for the Class members. By arriving at a settlement before a class certification determination was made, the uncertainties presented by this litigation were resolved in an efficient and effective manner for the benefit of the proposed class.

The Settlement was the result of vigorous arm's-length negotiations, conducted after extensive factual investigation and legal and economic analyses. Such good-faith negotiations were conducted by the Honorable Layn Phillips over the course of a nearly twelve-hour day. Further, Interim Class Counsel and Defendant's Counsel, who are experienced in these matters, believe that the proposed settlement is in the best interest of the Settlement Class. Accordingly, Plaintiff seeks the Court's approval of the proposed settlement.

### i.      Legal Standard Governing Preliminary Approval of Settlement

Preliminary approval of a settlement agreement is appropriate if the proposed settlement is "fair, reasonable, and adequate" so that notice should be given to the proposed class, and a hearing scheduled to consider final approval of the settlement. *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015); *Marcus v. Kan. Dep't. of Revenue*, 206 F.R.D. 509, 513 (D. Kan. 2002). Because preliminary approval is followed by more formal and comprehensive review and objection procedures, a court need not decide the merits of the underlying case and any doubts should be resolved in favor of preliminary approval. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (holding in determining the certification of a class, the "district court should avoid focusing on the merits underlying the class claim"); *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) (same); *see, e.g.*, *In re Vitamins Antitrust Litig.*, 99-197(TFH), 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999) (explaining that preliminary approval is appropriate absent "obvious deficiencies" raising doubts about the fairness of the settlement); 4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2017).

To assess whether a settlement is fair, reasonable and adequate, the Tenth Circuit identifies four factors that the trial court should consider:

(1) whether the proposed settlement was fairly and honestly negotiated;

8

(2) whether serious questions of law and fact exist, placing the ultimate outcome of

the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of

future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Under these criteria, the

Court should grant preliminary approval of the Settlement and order the dissemination of notice.

> ### ii.    The Settlement is the Product of Informed, Arm's-Length Negotiations Between Experienced Counsel

After a thorough assessment by Interim Class Counsel of the strengths and weaknesses of

the Plaintiff's case, and in light of the significant amount of work discussed above, both sides

possessed sufficient information to reach a fair, reasonable, and adequate settlement. *See

McNeely v. Nat'l Mobile Health Care*, LLC, CIV-07-933-M, 2008 WL 4816510, at *12 (W.D.

Okla. Oct. 27, 2008) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir.

2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after meaningful

discovery") (internal quotation marks omitted)).   Further, the terms of the Settlement were

vigorously negotiated by Plaintiff's and Defendant's counsel and included an all-day mediation

session with the Honorable Layn Phillips in Orange County, California.  *Exhibit 2*, ¶ 12. The

extensive participation of an experienced mediator like the Judge Phillips "reinforces that the

Settlement Agreement is non-collusive." *Johnson v. Brennan*, 10-CV-4712 CM, 2011 WL

1872405, at *1 (S.D.N.Y. May 17, 2011). Accordingly, the parties' negotiations, informed by the

underlying facts as well as legal analysis, were protracted, hard-fought, and conducted in the

utmost good faith, rendering a fair process to an equitable settlement.

### iii.    Questions of Law and Fact Pose Risks in the Litigation

The Settlement reflects the risks that Plaintiff must consider in reaching a successful outcome for class members through class certification, dispositive motions, trial, and appeal. For example, although Plaintiff believes the Class members have meritorious claims, there are significant risks with continuing this case. Had the parties not settled this case, the Court or jury would ultimately be required to decide these issues at the summary judgment stage or at trial— assuming the Court even certified a litigation class—placing the ultimate outcome of this action in doubt.  Defendant's Counsel ardently and consistently contested the viability of this action as a class and disputed several issues relating to its liability, including whether the facsimiles in question were advertisements, whether the Class had given their consent to receive the faxes, and whether Defendant had acted willfully or knowingly.    Further, Defendant would almost certainly have appealed any adverse ruling on class certification or findings from the Court or jury. "[T]he presence of such doubt tips the balance in favor of settlement because 'settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.'" *Childs v. Unified Life Ins. Co*., 10-CV-23-PJC, 2011 WL 6016486 at *13 (N.D. Okla. Dec. 2, 2011) (quoting *In re Qwest Commc'ns Int'l, Inc.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009)). Overall, the risks Plaintiff faced here remain significant and weigh in favor of the Settlement.

### iv.    The Value of the Settlement Outweighs the Possibility of Future Relief

Assuming the Settlement is given final approval, the Settlement Fund will consist of a single cash payment from Defendant in the amount of $3,500,000.00. *See Exhibit 1*, pg. 9. If the litigation were to continue, it would unquestionably be complex, expensive, and highly burdensome for both Plaintiff and Defendant. Even assuming that a litigation class were

certified, Plaintiff would still face the monumental task of trudging through what is likely to be a highly contentious and expensive merits discovery process, including the possibility of dozens of depositions, potential expert discovery, summary judgment briefing, and at the end of this process, a lengthy trial, from which the losing party would almost certainly appeal.  The parties efficiently settled the case before a ruling on class certification and dispositive motions.

By reaching a favorable settlement at this time, Plaintiff seeks to avoid significant expenses and delay for the Class, and instead ensure a favorable recovery as soon as possible, and without the need to incur millions of litigation expense and the uncertainty of a better recovery down the road. "The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely*, 2008 WL 4816510 at *13.  Reaching a settlement now provides certainty in the amount of recovery for the Plaintiff and the proposed class members. See *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) ("It has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush.'") (quoting State of *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 740 (S.D.N.Y. 1970)). Even if the Plaintiff was to prevail on class certification, summary judgment, and trial—which would have been anything but guaranteed given the factual and legal issues presented by the conduct at issue—post-verdict and appellate litigation may have lasted for years. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class"). This factor weighs in favor of preliminary approval.

v.      **Counsel Recommends Settlement**

Interim Class Counsel, Defendant's Counsel and an experienced mediator/former federal judge agree that the Settlement is fair, reasonable, and adequate. *Exhibit 2*, ¶ 15. The counsel's view of the settlement as fair and reasonable is entitled to great weight. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288 (D. Colo. 1997); *see In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986), aff'd, 855 F.2d 865 (Temp. Emer. Ct. App. 1988) ("Although the Court has independently evaluated the proposed settlement, the professional judgment of counsel involved in the litigation—who have made a determination that the settlement represents a fair allotment for their clients—is entitled to significant weight."); *see also Mehta*, 723 F. Supp. at 548 ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."). Interim Class Counsel are experienced TCPA and class action litigators who, at the time of the Settlement, were extremely knowledgeable about the factual and legal issues in the case. They worked steadfastly to prosecute the case, conducted substantial discovery, and conducted the depositions of corporate representatives for both Defendant and the fax broadcaster. *Exhibit 2*, ¶ 7. Interim Class Counsel reviewed thousands of lines of facsimile transmission logs and several hundred provider target logs detailing the outreach being conducted on Defendant's behalf to the Class Members. *Id.* Given these facts, it is the judgment of Interim Class Counsel and Defendant's Counsel that the Settlement is in the best interests of the Class.

Accordingly, Plaintiff requests that the Court certify the proposed class and preliminarily approve the Settlement.

**B.      The Class Should Be Conditionally Certified**

**i.      Legal Standard Governing Class Certification**

A court may conditionally certify a settlement class that, as here, satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621, 117 S. Ct. 2231, 2248 (1997); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982); *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 435 (10th Cir. 1978). Plaintiffs moving for class certification must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. FED. R. CIV. P. 23(a).

Here, Defendant consents to class certification solely for settlement purposes. See *Exhibit 1*, pgs. 15-16.  Defendant denies all claims asserted against it and has agreed to settlement solely for the purpose of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings.

Plaintiff moves the Court to certify the Settlement Class consisting of all persons with cases and claims against Molina arising out of the sending of unsolicited facsimiles in connection with Molina's network builds by Southwest for the class period from April 12, 2013 to the present.  Excluded from the Settlement Class are Molina, and any affiliate, subsidiary or division of Molina, along with any employees thereof, and any entities in which any of such companies have a controlling interest; Southwest, along with any employees or owners thereof; as well as all persons who validly opt-out of the Settlement Class.

As explained below, the proposed Settlement Class satisfies the Rule 23 requirements.

**ii.      The Class is So Numerous that Joinder is Impracticable**

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable . . ." FED. R. CIV. P. 23(a)(1). "The Tenth Circuit does not prescribe any set

formula to satisfy the numerosity element, nor has it said numerosity may be presumed by a specific number of class members." *McNeely*, 2008 WL 4816510 at *5; *Rex,* 585 F.2d at 436 (holding there is "no set formula to determine if the class is so numerous that it should be so certified" and that "[c]lass actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class").

Courts have certified class actions and approved settlements with an undefined number of class members, particularly if the alleged conduct spanned several years and included geographically diverse class members like in this case. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 554 (N.D. Ga. 2007) (certifying class and approving preliminary settlement of a price-fixing case where "[t]he proposed settlement class does not specify the number of plaintiffs in the potential settlement class," but based on initial transactional data "hundreds" of direct purchasers over a five-year period made joinder "wholly impracticable, if not impossible"); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 407 (S.D. Ind. 2001) (estimate of over 1,000 class members living in various states satisfied numerosity requirement).

Here, the Defendant allegedly caused unsolicited facsimiles concerning its state provider networks to go to hundreds if not thousands of healthcare providers in multiple states between 2014 and 2018, rendering joinder of all class members impracticable. *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 446 (D. Kan. 2006) (numerosity element satisfied citing that "plaintiffs believe the class consists of hundreds, if not thousands, of geographically dispersed businesses"). In fact, the estimated thousands of class members far exceed the number of class members in other cases where courts have certified a class. *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (class size of 46 plaintiffs was large enough to warrant

class certification); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 652-54 (4th Cir. 1967) (approving class size of 18); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991) ("[G]ood faith estimate of at least 50 members . . . is of sufficient size to be maintained as a class action.").

Joinder is also impracticable when the class members are geographically diverse. *HomeStake Prod. Co. Securities Litigation*, 76 F.R.D. 351, 361 (N.D. Okla. 1977) (geographic diversity among potential claimants adds to impracticability of joinder); *Beer v. XTO Energy, Inc.*, CIV-07-798-L, 2009 WL 764500, at *3 (W.D. Okla. Mar. 20, 2009) (class comprised of "200 individual wells, each of which have numerous royalty owners who reside in many different states"). Here, Defendant's alleged unsolicited facsimiles targeted numerous healthcare providers in and around the states of Oklahoma, Illinois, Virginia, and Pennsylvania.  In total, the number of providers across this geographic expanse who received allegedly unsolicited facsimiles regarding Defendant's provider networks during the approximately four-year span makes joinder impracticable.  Accordingly, the Settlement Class meets the numerosity requirement.

### iii.    Common Questions of Law and Fact Exist

"That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

In this case, the TCPA claims of Plaintiff and Class members arise from outreach campaigns which included sending facsimile transmissions to healthcare providers executed over the course of the Class Period in a manner alleged to be generally applicable to Representative Plaintiff and the Class.  These facts thus demonstrate commonality.

15

The alleged facts also implicate common legal issues, such as: (1) whether the faxes at issue are "advertisement[s]" as defined by 47 C.F.R. § 64.1200; (2) whether the faxes at issue contain the opt-out notice required to assert "established business relationship" or "prior express invitation or permission under 47 C.F.R. § 64.1200(a)(4)(i), (iv); (3) whether Molina is the "sender" of the faxes sent to Plaintiff and the Class; and (4) whether Molina's conduct was knowing and/or willful. Individually or collectively, such shared issues, particularly in the TCPA context, satisfy commonality.

### iv.  Claims of the Representative Plaintiff are Typical Claims of the Class

Here, "the claims . . . of the representative parties are typical of the claims . . . of the class . . . ." FED. R. CIV. P. 23(a)(3). Typicality, however, does not require that the claims be identical. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Rather, the class representatives must have the "same interests and suffer the same injuries as the proposed class members." *Heartland Commc'ns, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995). Thus, "typicality may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class." *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 652 (W.D. Okla. 2012) (citing *In re Four Seasons Sec. Laws Litig.*, 59 F.R.D. 667, 681 (W.D. Okla. 1973), rev'd on other grounds, 502 F.2d 834 (10th Cir. 1974)). Typicality is satisfied here because the Representative Plaintiff alleges the same legal theories and fact issues that underlie the rest of the Settlement Class' claims—namely, that he allegedly received one or more unsolicited facsimiles soliciting him to join one of Defendant's healthcare provider networks, which allegedly lacked the proper opt-out provisions and otherwise were sent in violation of the TCPA. As a result, Plaintiff alleges that

16

each member of the Settlement Class suffered the same type of injury arising out of the same factual scenario and type of evidence that could be used to establish Defendant's liability. Plaintiff seeks to recover the statutory damages that resulted from Defendant's alleged sending of the unsolicited facsimiles, from $500.00 per violation to as much as $1500.00 per violation for willful and knowing conduct.  "As with commonality, individual damage questions do not preclude a finding of typicality." *United Food*, 281 F.R.D. at 652 (citing *In re Texas Int'l Sec. Litig.*, 114 F.R.D. 33, 44 (W.D. Okla. 1987). Accordingly, the Settlement Class meets the typicality requirement.

### v.   Plaintiff Will Fairly and Adequately Protect the Class' Interests

Adequacy of representation requires that the "representative parties will fairly and adequately protect the interests of the class." This factor, in turn, necessitates a two-step inquiry into whether: (1) "the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) [ ] the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." FED. R. CIV. P. 23(a)(4); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (internal citations omitted); *McNeely*, WL 4816510, at *7. The Settlement Class meets both requirements. First, there is no evidence of a conflict of interest between the Representative Plaintiff and the class members. *Id.* (holding the conflict of interest must be "more than merely speculative or hypothetical" and a showing of a "real probability"). The Representative Plaintiff fairly and adequately protected the interests of the Class because he is a healthcare provider who received unsolicited facsimiles. Just as the rest of the class, the Representative Plaintiff and the Class have a genuine interest in the outcome of the matter. Plaintiff has also actively participated in the litigation by reviewing and producing documents, responding to discovery, and providing deposition testimony.  *Exhibit 2* at ¶ 7.

The Class and Representative Plaintiff are also represented by seasoned counsel who are thoroughly familiar with class actions and TCPA litigation. *See McNeely*, 2008 WL 4816510, at *7 (applying presumptions of competence and experience of class counsel); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161 (D. Kan. 1996) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class."). Moreover, there is no dispute that counsel for any of the parties are qualified, experienced, and vigorously prosecuted this class action. *Exhibit 2* at ¶ 14-17. Accordingly, the Representative Plaintiff will fairly and adequately protect the interests of the Settlement class.

### a.   The Requirements of Rule 23(b)(3) Also Are Satisfied

Once a court determines that the proposed class satisfies the requirements of Rule 23(a), a class should be certified if the court also "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods . . . ." FED. R. CIV. P. 23(b)(3). These requirements are met for purposes of certifying the settlement class at issue here. Proceeding as a class action would expediently resolve this case, especially when Defendant does not oppose class certification for settlement purposes only.

### i.   Questions of Law or Fact Common to the Class Predominate Over Questions Affecting Individual Members

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622–23; *see Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (predominance requires that "questions common to the class predominate, not that those questions will be answered, on the

merits, in favor of the class") (emphasis in original). Though commonality and predominance are similar fact inquiries, commonality under Rule 23(a)(2) requires only "a single common issue of fact or law shared by the class," while "the predominance and superiority requirements of Rule 23(b)(3) are far more demanding." *Naylor Farms v. Anadarko OGC Co*., CIV-08-668-R, 2009 WL 8572026, at \*4 (W.D. Okla. Aug. 26, 2009), order clarified sub nom. *Naylor Farms, Inc. v. Anadarko OGC Co.*, CIV-08-668-R, 2011 WL 7267850 (W.D. Okla. June 15, 2011); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 666 (D. Kan. 2004).

Predominance of common facts and laws can be inferred where the defendant's treatment of class members was based on uniform policies. *See Menocal v. GEO Grp., Inc.*, 320 F.R.D. 258, 269 (D. Colo. 2017), aff'd, 882 F.3d 905 (10th Cir. 2018) ("It is not necessary to analyze the intentions, expectations, and behavior of each individual class member; it is enough to consider the overall context based on class-wide proof.").   Here, Representative Plaintiff and Class members' TCPA claims arise from the same alleged formulaic marketing practice: faxes promoting participation with Molina's network sent to provider targets by Southwest, following its "standard operating protocol" and under the alleged supervision of Molina.  Molina's alleged "common scheme" of tasking Southwest to market its networks to provider targets in state campaigns is the evidentiary "glue" that binds together the class members' claims under the TCPA and makes class-wide proof possible. *Menocal*, 882 F.3d at 920.

 Other common questions of law and fact support predominance.  For example, Plaintiff alleges a common purpose of the faxes at issue—the promotion of Molina's provider networks— and thus would rely upon class-wide evidence to show that the faxes are "advertisements." The Fax Transmission Logs establish to which fax telephone numbers in the class Southwest successfully sent a fax, thus abrogating the "need for recipient-by-recipient adjudication" of that

point. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 685 (7th Cir. 2013) (observing that transmitting a fax requires a sending and a receiving machine to communicate using a standard protocol).  Finally, the issue of whether Molina acted knowingly and/or willfully in violating the TCPA also would be susceptible to common proof across the entire Class.

The availability of aggregated business records allegedly documenting the fax activity at issue here, demonstrate that the overriding majority of Class-wide questions, both legal and factual, can be answered with common proof, and thus predominate over any issues necessitating individualized inquiry.  Since the same source of evidence, in support of the Class' claim for TCPA violation, and statutory damages, would apply to all or nearly all Class members' cases, this case warrants class certification.  Accordingly, the Settlement Class meets the predominance requirement to certify the Class.

### ii.     A Class Action is Superior to Other Available Methods of Adjudication

To determine superiority, the Court must balance the advantages of class action with other available methods of adjudication by examining:

(A) the class members' interests in individually controlling the prosecution or

defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already

begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in

the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). However, in a settlement-only class certification, a court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem,*

521 U.S. 591 at 620; Fed. R. Civ. P. 23(b)(3)(D). TCPA actions have been determined to satisfy these requirements because of the "large number of claims, along with the relatively small statutory damages amount, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims." *See, e.g.*, *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014); *cf. Mims v. Arrow Fin. Servs, LLC*, 132 S. Ct. 740, 753 (2012) (noting that plaintiffs are unlikely to pay a $350.00 filing fee to bring an individual TCPA claim for $500.00).

Here, any interests of Class members in individually prosecuting claims are outweighed by the efficiency of the class device. *See Universal Serv.*, 219 F.R.D. at 679 (finding individual suits against defendants would be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation" while a "class action is by far the more superior method"). Finally, this forum is particularly appropriate for adjudicating the Settlement Class claims as Plaintiff resides in this federal district, and the state of Oklahoma is home to many of the affected healthcare providers. *See, e.g.*, *XTO Energy, Inc.*, 2009 WL 764500, at *7 (finding forum appropriate since the majority of wells involved in the class action are located in the Western District of Oklahoma).

Accordingly, the Settlement Class meets the Rule 23(b)(3) requirements of predominance and superiority. Certifying this Settlement Class and approving the Settlement would be fair and the most expedient way to resolve the issues in this case.

### b. Appointment of Class Counsel and Representative Plaintiff

For class certification and settlement purposes, Plaintiff requests that the Court appoint him to act as representative of the Settlement Class. Plaintiff also seeks the Court's approval for appointment of class counsel: Joe P. Leniski, Jr. of Branstetter, Stranch & Jennings, PLLC, of

Nashville, Tennessee; James A. Streett of The Streett Law Firm of Russellville, Arkansas; and Jason B. Aamodt of the Indian and Environmental Law Group, PLLC, of Tulsa, Oklahoma. Each of these firms is highly experienced in class action litigation and has ably served and protected the interests of the Class throughout this litigation.

**c.       The Proposed Notice is Adequate**

Federal Rule of Civil Procedure 23(c)(2)(B) says, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). Rule 23(e)(B) similarly says, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B).

The Proposed Notice here meets these requirements. The proposed form of notice defines the Class, the allegations and pertinent procedural history of this class action, outlines the terms of the proposed settlement, provides notice of the fairness hearing and how to object to the proposed settlement, and explains how Class members may obtain additional information, including a copy of the Settlement Agreement. *See Exhibit 1*, Exhibit B.  Finally, the parties propose a tailored notice campaign, designed to reach as many Settlement Class Members as possible through direct mail to the healthcare providers listed on the target provider logs. Information about the Settlement will also be available on the Settlement Website.  Accordingly, Class Counsel respectfully requests that the Court approve the form and plan of dissemination of notice.

> **d.    The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing**

Plaintiff proposes (and Molina does not object to) the following general time schedule to provide for notice, comment, and final approval of the Settlement Agreement:

> 1)    that within twenty (20) days of the Court entering an Order preliminarily approving the Class Settlement, the Claims Administrator mail approved notice;

> 2)    that within twenty (20) days of the Court entering an Order preliminarily approving the Class Settlement, the Court order the Clams Administrator to establish and maintain the Settlement Website;

> 3)    that the Class Members and interested persons shall have later than forty-five (45) days after dissemination of notice of the Class Settlement to allow them to opt-out of the proposed Class Settlement, and not later than sixty (60) days after dissemination of notice of the Class Settlement to allow them to object to the proposed Class Settlement in the form and fashion described in the Settlement Agreement;

> 4)    that Class Counsel shall thereafter promptly file their brief in support of Final Approval of the Class Settlement; and

> 5)    that the Court schedule the Fairness Hearing as soon thereafter as practicable, but no earlier than eighty-five (85) days after entry of the Preliminary Approval Order.

> **e.    The Court Should Enter an Injunction Pending Final Approval**

In order to protect and effectuate the Settlement pending the final approval, and in aid to the Court's authority and jurisdiction, the parties have agreed and Plaintiff hereby moves the

23

Court to enjoin the Class Representative and all persons in the Settlement Class from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties. This injunction will remain in force until the Court enters the Final Approval Order or until such time as the Parties notify the Court that the Settlement has been terminated.

## V.    CONCLUSION

**WHEREFORE**, Class Representative requests the following:

a.   That the Court enter an Order granting its preliminary approval of the Settlement Agreement, in the form substantially similar to Exhibit D to *Exhibit 1*;

b.   That the Court conditionally certify the Settlement Class under Fed. R. Civ. P. 23;

c.   That the Court conditionally appoint Plaintiff Dr. Sam LeBarre Horton as Class Representative for the Settlement Class;

d.   That the Court conditionally appoint Joe P. Leniski, Jr. of Branstetter, Stranch & Jennings, PLLC, of Nashville, Tennessee; James A. Streett of The Streett Law Firm of Russellville, Arkansas; and Jason B. Aamodt of the Indian and Environmental Law Group, PLLC, of Tulsa, Oklahoma as Class Counsel for the Settlement Class;

e.   That the Court approve the notice plan and the notice attached as Exhibit B to *Exhibit 1*, or direct any additional or different notice that may be required, and approve Plaintiff's proposed Scheduling Order;

f.   That the Court order any interested party to file any objections to the Settlement within the time limit set by the Court, with supporting documentation, and order

that such objections, if any, be served on counsel as set forth in the proposed
Preliminary Approval Order;

g.  That the Court enjoin the Class Representative and all persons in the Settlement
Class from commencing, pursuing, maintaining, enforcing, or prosecuting, either
directly or indirectly, any Released Claims in any judicial, administrative, arbitral,
or other forum, against any of the Released Parties. Such injunction will remain in
force until the Court enters the Final Approval Order or until such time as the
Parties notify the Court that the Settlement has been terminated; and

h.  That the Court schedule a Fairness Hearing for the purpose of receiving evidence,
argument, and any objections relating to the Parties' Settlement Agreement as set
out in *Exhibit 1* or as the Court may direct.

DATED: May 20, 2019                    Respectfully Submitted,

                                       /s/ *Joe P. Leniski, Jr.*
                                       Joe P. Leniski, Jr. (TN Bar No. 22891) (PHV)
                                       BRANSTETTER, STRANCH &
                                       JENNINGS, PLLC
                                       223 Rosa L Parks Ave, Suite 200
                                       Nashville, Tennessee 37203
                                       (615) 254-8801
                                       joeyl@bsjfirm.com

                                       James A. Streett (Ark. Bar No. 2007092) (PHV)
                                       STREETT LAW FIRM, P.A.
                                       107 West Main
                                       Russellville, AR 72801
                                       (479) 968-2030
                                       James@StreettLaw.com

                                       Jason B. Aamodt, OBA No. 16974
                                       Deanna Hartley, OBA No. 19272
                                       Krystina E. Phillips, OBA No. 30111
                                       Dallas L.D. Strimple, OBA No. 30266
                                       **INDIAN AND ENVIRONMENTAL LAW GROUP**
                                       204 Reunion Center

25

Nine East Fourth Street
Tulsa, Oklahoma 74103
Tel – 918-347-6169
jason@iaelaw.com
deannaa@iaelaw.com
krystina@iaelaw.com
dallas@iaelaw.com
*Attorneys for Representative Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the May 20, 2019, I electronically filed the foregoing document via the court's online CM/ECF system, which subsequently transmitted notice to the following counsel of record via email:

JASON ALAN MCVICKER
MARY QUINN-COOPER
MICHAEL FRANKLIN SMITH
KATHLEEN R. HARTNETT
QUYEN TA

/s/ *Joe P. Leniski, Jr.*
Joe P. Leniski, Jr.