**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DR. SAM LEBARRE HORTON, on behalf of himself and all other entities and persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 4:17-cv-00266-CVE-JFJ ) JURY DEMAND |
| vs. | ) ) |
| MOLINA HEALTHCARE, INC., | ) ) |
| Defendant. | ) |

**CLASS REPRESENTATIVE'S MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARD AND MEMORANDUM OF LAW IN SUPPORT**

In connection with the preliminary approval of the Settlement[1] in the above-captioned class action, Branstetter, Stranch, and Jennings PLLC ("Branstetter"), Street Law Firm, P.A. ("Street Law"), and Indian and Environmental Law Group ("IELG", and collectively with Branstetter and Street Law, "Class Counsel") and Class Representative, Dr. Sam Lebarre Horton, respectfully move the Court for an award of attorneys' fees in the amount of **$1,166,667.00** (the "Fee Request") of the Settlement Fund and out-of-pocket litigation expenses in the amount of **$57,003.42** and an incentive award for the Class Representative in the amount of **$15,000.00**.

### I.     Introduction

Class Counsel have obtained an exemplary recovery for the Class, including the creating of a Settlement Fund in the amount of $3,500,000.00 to compensate Plaintiff and the Class for purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The

---

[1] All terms not defined herein have the meaning set forth in the Settlement Agreement and Release dated April 17, 2019 and previously submitted to the Court at Dkt. No. 112-1.

1

Fee Request is based on the amount of the common-benefit Settlement Fund created by the Settlement.

In light of the significant amount of work performed by Class Counsel, the circumstances of this case including the risks of further litigation, the final, outstanding recovery on behalf of the Class, and the expenses incurred herein, Class Counsel believes the request for fees, reimbursement of expenses, and request for incentive award is fair and reasonable, and therefore respectfully request that the Court grant the instant Motion.

## II.     Background

The factual and procedural background of this case is well known to the Court. Thus, Class Counsel respectfully refers the Court to Plaintiff's Memorandum in Support of the Final Approval of Settlement, the Declaration of Joe P. Leniski, Jr. (filed contemporaneously herewith), the Declaration of James Street (filed contemporaneously herewith), the Declaration of Jason Aamodt (filed contemporaneously herewith), the Settlement Agreement, the relevant the pleadings on file, and any other documents which the Court may take judicial notice, all of which are respectfully incorporated as if fully set forth here.

## III.    Standard of Review

"An award of attorneys' fees is a matter uniquely within the discretion of the trial judge, who '"has firsthand knowledge of the efforts of counsel and the services provided."' *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Thus, an award of attorneys' fees will only be reversed for abuse of discretion. *Id.*; *Gottlieb v. Barry*, 43 F.3d 474, 486 (10th Cir. 1994).

Further, "a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Chieftain Royalty Co. v.*

*Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 465–66 (10th Cir. 2017). "[C]ase contribution awards are meant to compensate class representatives for their work on behalf of the class, which has benefited from their representation," *Id*. (internal quotation marks omitted). "[I]ncentive awards are not uncommon and are particularly given where a common fund has been created for the benefit of the entire class." *Id*.

    **IV.**    **Argument**

    **A.**    **The Court Should Apply the Percentage-Of-The-Fund Approach to Calculate and Award Attorneys' Fees**

"Typically, successful…class action suits which result in the recovery of money or property wrongfully diverted from the corporation, or which result in the imposition of changes in internal operating procedures that are designed to produce such monetary savings in the future, are viewed as fund creating actions." *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989) (citing *CM & M Grp., Inc. v. Carroll,* 453 A.2d 788, 795 (Del. 1982)).

The Tenth Circuit has "a preference for the percentage of the fund method" in common fund cases. *Gottlieb*, 43 F.3d at 483 ("In our circuit . . . *Uselton* implies a preference for the percentage of the fund method.") (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993)); *Rosenbaum v. McAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (quoting *Gottlieb v. Barry*, 43 F.3d at 483); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559 at *2–3 (D.Colo. Dec. 22, 2010) (The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis, as in this case.").

Under the percentage-of-the-fund method, an appropriate fee is equal to a reasonable percentage of the common fund. *Brown*, 838 F.2d at 454.

This federal district has often recognized and applied the Tenth Circuit's preference for the percentage-of-the-fund approach. As courts in the Western District of Oklahoma have recently held, for example, "[i]n the Tenth Circuit, the preferred approach for determining attorneys' fees in common fund cases is the percentage of the fund method." *See Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, No. CIV-12-1319, ECF No. 52 (W.D. Okla. May 13, 2015) ("*Laredo* Fee Order"), at 5-6 (citing *Gottlieb*, 43 F.3d at 483); *see also Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, ECF No. 182 (W.D. Okla. May 31, 2013) ("*QEP* Fee Order"), at 3-4; *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV- 07-933-M, 2008 WL 4816510 at *14 (W.D. Okla. Oct. 27, 2008).

The Tenth Circuit's approach is consistent with national trend favoring the percentage of the fund approach, as "the vast majority of courts of appeals now permit or direct courts to use the percentage method in common-fund cases." MANUAL FOR COMPLEX LITIGATION § 14.121 at 187 (4th ed. 2004); *see also* Charles W. "Rocky" Rhodes, *Attorneys' Fees in Common–Fund Class Actions: A View from the Federal Circuits*, 35 The Advocate (Tex.) 56, 57-58 (2006).

An award of attorneys' fees should be calculated based upon the total common fund amount even though the fund may be subject to possible future reductions. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on this basis of the total funds made available…."); *Williams v.*

4

*MGM–Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that the district court abused its discretion by failing to award attorneys' fees on one-third of the entire settlement amount).

    **B.**    **The Fee Request is Fair and Reasonable and Should Be Approved**

In *Brown*, the Tenth Circuit adopted twelve factors from a Fifth Circuit case, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, to be considered when determining a reasonable fee in common fund cases. *See* 838 F.2d at 454-55 (deeming them factors which help measure the attorneys' contributions, and thus are appropriate in setting and reviewing percentage fee awards in common fund cases). The twelve *Johnson* factors are:

(1) the time and labor involved;

(2) the novelty and difficulty of the questions;

(3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) any prearranged fee;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases. *Id.*

The weight given to each *Johnson* factor is within the Court's discretion depending on the facts and issues of the case. *Id.* at 456; *Gottlieb*, 43 F.3d at 482, n.4. "Rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 456. Here, factors 10 and 11 are not applicable, however Factors 1-9 and 12 clearly weigh heavily in favor of the Fee Request.

### 1. The Time and Labor Involved Supports the Fee Request (Factor 1)

The time and labor Class Counsel have expended in the research, investigation, prosecution, and resolution of this action fully support the Fee Request. Through July 20, 2019, Class Counsel have spent 1,683.6 hours litigating this action. (*See* Declaration of Joe P. Leniski, Jr., ¶ 20 ("Leniski Decl.", attached hereto as **Exhibit 1**); the Declaration of James A. Streett, ¶ 8 ("Streett Decl.", attached hereto as **Exhibit 2**); and the Declaration of Jason B. Aamodt, ¶ 7 ("Aamodt Decl.", attached as **Exhibit 3**).

**Pleading and Motion Practice.** Plaintiff conducted a detailed investigation regarding the faxes at issue before filing suit in order to put together a well-crafted complaint. This original complaint withstood a Motion to Dismiss (Dkt. Nos. 9 and 32.) and Plaintiff eventually dropped one defendant and filed a Second Amended Class Action Complaint. (Dkt. No. 63.) As discovery proceeded, Plaintiff also identified certain areas where the class definition sought in the earlier complaints required updating and, as a result, Plaintiff filed a Third Amended Complaint in August of 2018, principally focusing on the scope of a Class definition. (Dkt. Nos. 83-85.)

**Discovery.** Following the denial of the Motion to Dismiss, the parties negotiated a case management schedule and jointly crafted a protective order to facilitate discovery. Plaintiff engaged in extensive discovery of his claims, which included the drafting and service of multiple sets of requests for interrogatory responses, documents, and requests for admissions on the

defendants. Plaintiff also engaged in discovery of the third-party fax transmitter, which included the crafting and service of subpoenas, and obtaining declaration testimony from a representative for the fax transmitter. Throughout the discovery phase, the parties held numerous meet-and-confer discussions to attempt to resolve discovery disputes, which ultimately culminated in Plaintiff filing a motion to compel, which was eventually resolved without Court intervention.

Document discovery required Class Counsel to electronically store, review and tag of hundreds-of-thousands of pages of documents produced by the defendants. Most important to this discovery was numerous spreadsheets containing the fax logs that formed the basis of the Class. Reviewing and coding this material to determine the faxes that were sent that would fall within the Class definition and also support a finding that such faxes violated the TCPA took extensive review and analysis by Class Counsel and third-party experts retained specifically for this purpose. Class Counsel also had to provide written answers and documents in his possession in order to respond to at least four sets of discovery requests served by the defendants.

Class Counsel also defended the deposition of the named Plaintiff in his home state of Oklahoma, and took 30(b)(6) depositions of both Southwest Medical and Molina in their home jurisdictions of Oklahoma and California, respectively, regarding the sending of the faxes at issue in this litigation.

**Class Certification Motion.** Armed with the information gleaned from the documents and depositions, Class Counsel filed a Class Certification Motion in August of 2018 seeking class certification of the putative class of recipients of unsolicited faxes sent on behalf of the Defendant. Class certification was vigorously opposed by the Defendant, and was thoroughly briefed by the parties. After the Class Certification Motion had been fully briefed and submitted

to the Court for consideration, but prior to a hearing, the parties agreed to attempt to mediation and requested the Court stay all proceedings pending mediation.

**Resolution and Mediation.** The parties held a full-day mediation in California on March 20, 2019 before third-party neutral mediator, the Honorable Layn Phillips (Ret.) of JAMS, a former U.S. District Judge for the Western District of Oklahoma. In preparation for this, Class Counsel prepared and submitted to the Mediator a robust mediation brief that included several exhibits and laid out Plaintiff's theory of liability and grounds for class certification. As a result of these efforts, the parties were able to reach a global settlement to resolve this case on a class-wide basis for $3,500,000.00. From the time of the mediation through the submission of the preliminary approval papers, Class Counsel also spent considerable time drafting and editing the Settlement Agreement and preliminary approval papers.

**Preliminary Approval.** Plaintiff filed a Motion for Preliminary Approval on May 20, 2019 and the Court issued its Order preliminarily approving the settlement on May 22, 2019 (Dkt. Nos. 112 and 115, respectively.) Thereafter, Class Counsel has worked diligently with the claims administrator to ensure that the Rule 23 class notice process has proceeded efficiently and diligently and in accordance with the Court's May 22, 2019 Order.

### 2. The Novelty and Difficulty of the Questions Presented Support the Fee Request (Factor 2)

Cases brought under the TCPA often involve novel questions regarding whether the scope of junk-fax campaign reach those parties who consented to the request or did not consent to the request. *See, e.g.*, *E & G, Inc. v. Mount Vernon Mills, Inc.*, 316 F. Supp. 3d 908, 911 (D.S.C. 2018) (denying summary judgment when genuine issue of material fact existed as to whether plaintiff had provided previous express consent to receive facsimiles); Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax

8

Prevention Act of 2005, 71 FR 25967–01, 2006 WL 1151584 (May 3, 2006) ("2006 FCC Rule") ("In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given."). Issues of consent also present challenges to class certification. *See Gene & Gene, LLC v. BioPay LLC*, 541 F.3d 318, 326-329 (denying certification where database failed to accurately record whether a recipient gave consent).

This case is no different. The difficulty raised by the Defendant's operations revolved around the fact that some of its sales representatives would attempt to reach out to potential customers prior to the sending of a fax. These sales representatives would then catalog these interactions in numerous Excel spreadsheets.

To properly prosecute this case, Class Counsel had to identify and develop a method to identify the faxes that were truly unsolicited. After a thorough review of the relevant documents and after party depositions, Class Counsel identified and developed a method of isolating and identifying the indisputable, unsolicited faxes at issue. It is not surprising that after Plaintiff presented these facts in detail in the class certification briefing, Defendant sought a mediation of the matter.

### 3. The Skill Required to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Attorneys Who Have Appeared in this Case Support the Fee Request (Factors 3 and 9)

This class action called for considerable skill and experience, requiring significant and time-consuming investigation, a mastery of complex factual circumstances, and the skill to respond to a host of legal defenses. Plaintiff's Counsel used their knowledge of and prior experience in derivative and class actions to successfully litigate and resolve this highly complex case. The quality of representation by counsel on both sides was also high. Indeed, the settling Defendant has also been represented by skilled defense attorneys who spared no effort in the

9

defense of their clients. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976) (also considering the reputations of defense counsel in determining the fee, as defense counsel's stature reflects the challenge faced by the plaintiffs' attorneys). Defendant is one of the nation's largest managed care companies which can draw on considerable resources to fund its defense. Defendant is represented by lawyers from the Palo Alto offices of Boies Schiller Flexner LLP, and locally by attorneys with McAfee and Taft, both of which are experienced, highly qualified and well-known law firms. In short, without the experience, skill, and determination displayed by Class Counsel, the Settlement would not have been achieved. Thus, this *Johnson* factor also supports the reasonableness of the Fee Request.

### 4. The Preclusion of Other Employment and Time Limitations Imposed by the Client or the Circumstances Support the Fee Request (Factors 4 and 7)

The Fee Request is further supported by the fact that the time and effort required to prosecute this Action properly precluded Plaintiffs' Counsel from other employment opportunities. "Class litigation of this magnitude inherently entails significant opportunity costs." *Vaszlavik v. Storage Tech. Corp.*, Civil Action No. 95-B02525, 2000 WL 1268824, at *9-10 (D. Colo. Mar. 9, 2000). Here, Class Counsel was necessarily precluded from working on other cases and pursuing otherwise available opportunities due to the requirement of their dedication of time and effort to the prosecution of this action. Moreover, because Class Counsel's work was entirely contingent, they seemingly worked on this case without receiving any compensation for their efforts for nearly three years. (Leniski Decl. ¶¶ 27-31.)

### 5. The Fee Request is in Line with a Customary Fee (Factor 5), the Contingent Nature of the Fee Supports the Fee Request (Factor 6), and Awards in Similar Cases (Factor 12)

The Fee Request of 33.33% of the Settlement Fund is in line with fees awarded in contingency fee cases in this District. *See Laredo* Fee Order at 7-8 ("Co-Lead Counsel's request of forty percent (40%) of the $6,651,997.95 Settlement Amount is within the acceptable range of attorneys' fees approved by Oklahoma Courts as being fair and reasonable in contingent fee class action litigation "); QEP Fee Order at *6 (awarding million settlement); *CompSource Oklahoma v. BNY Mellon, N.A.*, No. CIV. 08-469- KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases").

In fact, federal District Courts routinely award class counsel one-third of a common fund in TCPA class action settlements. *See, e.g.*, *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953 (N.D. Ill. Nov. 1, 2010), Dkt. No. 146, Final Approval Order (attached as **Exhibit 4** hereto) (approving fee award of one-third of settlement fund in a TCPA case); *Martin v. JTH Tax, Inc.*, Case No. 1:13-cv-6923 (N.D. Ill. Sept. 23, 2015), Dkt. No. 86 (attached as **Exhibit 5** hereto) (approving fee award of 1/3 of common fund and $10,000 incentive payment to class representative in a TCPA case); *Bridgeview Health Care Ctr., Ltd. v. Clark*, 2015 WL 4498741 (N.D. Ill. July 23, 2015) (approving award of one-third of the common fund in a TCPA case, because "the one-third contingency fee is well within the normal range in common fund cases"); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Dkt. Nos. 87 (without attachments) and 91) (awarding one-third of common fund) (attached as collective **Exhibit 6** hereto); *Hanley v. Fifth Third Bank, No.* 12-01612 (N.D. Ill. Dec. 23, 2013) (Dkt. Nos. 79 and

11

87) (attached as collective **Exhibit 7** hereto) (reflecting fee award of one-third of settlement fund).

Plaintiff's Counsel would have received zero compensation or reimbursement of expenses had the litigation been unsuccessful. Nonetheless, Plaintiff's Counsel assumed the risks associated with pursuing this case and obtained a substantial result. Given the risk of non-recovery, this factor weighs heavily in favor of the Fee Request. *Vaszlavik*, 2000 WL 1268824 at *9-10. Thus, these *Johnson* factors support approval of the Fee Request.

### 6. The Amount Involved and the Results Obtained Supports the Fee Request (Factor 8)

Class Counsel have obtained a significant recovery consisting of a $3.5 million Settlement Fund. Class Counsel achieved this result despite the various risks involved in prosecuting the claim as mentioned above.  Plaintiff believes the Class members have meritorious claims, but there are always significant risks with continuing to litigate this case through dispositive motions and a trial.  Defendant's Counsel consistently and constantly contested the viability of this action as a class and disputed several issues relating to its liability, including and most importantly, whether the facsimiles in question were advertisements, whether the Class had given their consent to receive the faxes, and whether Defendant acted knowingly and willfully.  Although Plaintiff believes in the strength of his case and that he could have prevailed in this litigation, obtaining such a sizeable amount of relief for the class at this stage in the litigation counseled for resolving the claims at this juncture.

### C. Class Counsel's Out-Of-Pocket Expenses Should Be Reimbursed

Under the common-fund doctrine, District Courts routinely award costs in addition to fee awards from the common-fund. See *Vaszlavik*, 2000 WL 1268824, at *11 ("As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to

receive reimbursement of all reasonable costs incurred . . . in addition to the attorney fee percentage."). Here, Class Counsel respectfully requests reimbursement of the litigation expenses that have been incurred by Class Counsel in prosecuting and resolving this Class Action.

Class Counsel's out-of-pocket expenses total $57,003.42. (Leniski Decl., ¶ 25; Streett Decl., ¶ 9; Aamodt Decl., ¶ 8). Those expenses were reasonably and necessarily incurred by Class Counsel and are directly related to the prosecution of this Class Action. The costs include routine expenses incurred relating to court fees, travel and transportation, expert expenses, document production and review, court reporters, and mediation. (*Id.*) A detailed breakdown of these expenses may be provided for *in camera* review to the Court upon request.

### D. A Lodestar Cross-Check Supports the Fee Request

Although not required, nonetheless a lodestar cross-check s supports the Fee Request. *CompSource*, 2012 WL 6864701, at *8 ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.") (citations omitted). Here, Class Counsel spent a combined total of 1683.6 hours for a lodestar of $964,291.76 in attorney and paraprofessional time. (Leniski Decl., ¶ 20; Streett Decl., ¶ 8; Aamodt Decl., ¶ 7). This results in an effective multiplier of 1.21, which is more than reasonable under the case law. Courts typically apply a multiplier of between three and five to compensate counsel for the inherent risks of contingent representation and the complexity involved in large class actions. *See, e.g.*, *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing twenty three settlements and multipliers for each, in which the average multiplier is 3.28); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) (awarding a

multiplier of 3.18 in common fund case and concluding that such a multiplier is within the range of reasonableness in common-fund cases);

### E. The Requested Incentive Award to The Class Representative Is Reasonable

"[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "Incentive awards…are intended to compensate class representatives for work done on behalf of the class…" *Rodrigues v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). These services typically include "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." Newberg on Class Actions § 17:3.

Here, the Class Representative initiated this litigation and was instrumental to its successful outcome. The Class Representative reviewed pleadings, provided timely written and thorough discovery responses, sat for a full deposition, and was actively involved in settlement negotiations. (Leniski Decl., ¶ 32.) He remained apprised of the status of the litigation throughout this case, including regular correspondence with undersigned counsel. (*Id*.)  He also reviewed and agreed to all terms of the Settlement before it was finalized and the agreement was executed. Accordingly, the Class Representative requests an incentive award of $15,000. (*Id*.)

This reward is well within the reasonable range for a case of this size and complexity. *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (approving award of $25,000 incentive award for individual class representative); *Hainey v. Parrott*, 2007 WL 3308027 at * 5 (S.D.Ohio Nov. 6, 2007) (approving $50,000 incentive awards).

## V. Conclusion

For the reasons above Class Counsel and the Class Representative, Dr. Sam Lebarre Horton, respectfully move the Court for an award of attorneys' fees of **$1,166,667.00**, out-of-pocket litigation expenses in the amount of **$57,003.42** and an incentive award for the Class Representative in the amount of **$15,000.00**.

DATED: July 26, 2019

Respectfully submitted,

/s/ *Joe P. Leniski, Jr.*
Joe P. Leniski, Jr. (TN Bar No. 22891) (PHV)
BRANSTETTER, STRANCH &JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
joeyl@bsjfirm.com

James A. Streett (Ark. Bar No. 2007092) (PHV)
STREETT LAW FIRM, P.A.
107 West Main
Russellville, AR 72801
(479) 968-2030
James@StreettLaw.com

Jason B. Aamodt, OBA No. 16974
Deanna Hartley, OBA No. 19272
Krystina E. Phillips, OBA No. 30111
Dallas L.D. Strimple, OBA No. 30266
**INDIAN AND ENVIRONMENTAL LAW GROUP**
204 Reunion Center
Nine East Fourth Street
Tulsa, Oklahoma 74103
Tel – 918-347-6169
Email -    jason@iaelaw.com
           deannaa@iaelaw.com
           krystina@iaelaw.com
           dallas@iaelaw.com

*Attorneys for Representative Plaintiff and*
*Class Counsel for the Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2019, I electronically transmitted the attached document to the following individuals via the Court's online CM/ECF filing system:

JASON ALAN MCVICKER
MARY QUINN-COOPER
MICHAEL FRANKLIN SMITH
KATHLEEN R. HARTNETT
QUYEN TA

/s/ *Joe P. Leniski, Jr.*
Joe P. Leniski, Jr.